S. MORSE AND WIFE *vs.* E. P. ADAMS, EXECUTRIX, AND OTHERS.

What is known in England, and some of the States of the Union, as the vendor's lien for unpaid purchase money of land sold, where no mortgage or other instrument creating a lien is taken, does not exist in this State.

BEFORE JOHNSON, CH., AT EDGEFIELD, AUGUST, 1868.

The decree of His Honor the Chancellor is as follows:

JOHNSON, Ch. On or about the 3d day of February, 1863, the complainant sold to James S. Adams a tract of land containing two hundred and eighty-eight acres, and took from the said Adams, in payment for the same, his sealed note for five hundred dollars, payable at one day, and a sealed note for fourteen hundred dollars, made by A. A. Glover and W. F. Durisoe, and payable to James S. Adams, and dated 7th January, 1863.

James S. Adams, since that time, died, and his widow has administered upon his estate, which is insolvent, and it is supposed that the note on Glover and Durisoe can never be collected.

The bill, in this case, is filed, amongst other things, to enforce the lien of the vendor for the payment of the purchase money. This lien is recognized by the English Courts and by some of the American Courts, but has never been recognized by the Courts of this State, though they have frequently been applied to for the purpose. In a late case, the question was made before the Appeal Court, and it declined to recognize the right of the vendors on the express ground that it had never been done by our Courts.

It is adjudged and ordered that the complainants, as vendors, have no lien upon the land described in the pleadings, and, also, that they have no right to claim a recision of the contract of sale.

The complainants appealed against the decree of His Honor, and now moved this Court to reverse the same, on the grounds:

1. That there has not been made, by the Courts of this State, any authoritative decision adverse to the vendor's lien.

2. That if such decision had been made, it is not founded on principles of sound equity—is not entitled to weight as a precedent, and should not control the Supreme Court in this case.

3. That the decision is, in every respect, contrary to equity.

*Bonham*, for appellants, submitted that *Wragg* vs. *The Comptroller General*, 2 Des., 506, and *McCorkle* vs. *Montgomery*, 11 Rich. Eq., 114, 132, do not conclude the question; and he cited *Mackreth* vs. *Symmons*, 1 Lead. Cas. Eq., 235; 15 Ves., 329; *Bayley* vs. *Greenleaf*, 7 Wheat., 46; 1 Hilliard on Mortgages, 470, and other authorities, to show that the vendor's lien existed in England and some of the States of the Union, and contended that it should be treated as existing in this State.

June 29, 1870. The opinion of the Court was delivered by

Moses, C. J. We are left by the brief without the particular circumstances which attended the contract of sale by the plaintiffs to Adams, further than that the vendee gave his own note, and that of Glover and Durisoe, as the consideration of the purchase.

Lord Eldon, in *Mackreth* vs. *Symmons*, 15 Ves., 349, (a leading case,) says: "The more modern authorities upon the subject have brought it to this inconvenient state, that the question is not a dry question upon the fact whether a security was taken, but it de-

pends upon the circumstances of each case, whether the Court is to infer that the lien was intended to be reserved, or that credit was given, and exclusively given, to the person from whom the other security was taken." Here the transfer and acceptance of the note of third persons for almost two-thirds of the price might go far to shew the intent of the parties that no lien was to be retained by the vendor.

We propose to deal with the general question submitted by the appellant, whether in South Carolina the vendor, by the mere fact of the sale, has an equitable lien on the land for the purchase money?

While it is not to be denied that in the English Chancery, and the Courts of several of the States of the Union, the vendor is held to have a lien on the land as a security for the purchase money, without any mortgage or other instrument creating it, in the case of *Wragg* vs. *Comptroller General*, as long ago as 1808, the application of the doctrine in this State was repudiated. The decision there was declared to be in conformity with the law prevailing in South Carolina for the past sixty years, and in 1859 the Court, in *McCorkle* vs. *Montgomery*, 11 Rich. Eq., 132, emphatically endorsed it.

It would require circumstances of a strong and controlling character to induce us to reverse a rule so long existing in regard to property, against which no complaint has been made, and which the Legislature, by its silence, and the Bar, by its acquiescence, have approved. So well has it been understood that a sale of real estate is seldom made on credit without the execution of a mortgage to secure the promised consideration.

It would ill comport with the province of the Court, whose duty it is to administer the law as it is found to exist, by rash changes to unsettle rules of property, and undertake to annex conditions to sales of real estate which never entered into the conception or understanding of the contracting parties.

The decree of the Chancellor is affirmed, and the motion dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.